833

REYNOLDS PALLET & BOX CO.,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Charles T. REYNOLDS, Sr., d.b.a. Charles
T. Reynolds Box Company, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Nos. 15191, 15192.

United States Court of Appeals
Sixth Circuit.

Nov. 8, 1963.

Rehearing Denied Dec. 18, 1963.

Robert F. Wessel, Hamilton, Ohio
(Richard J. Wessel, Hamilton, Ohio, on
the brief), for petitioner.

Gladys Kessler, N. L. R. B., Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomon I. Hirsh, Atty., N. L. R. B., Washington, D. C., on the brief), for respondent.

Before CECIL, Chief Judge, MILLER, Circuit Judge, and DARR, Senior District Judge.

CECIL, Chief Judge.

In these cases the petitioners, Reynolds Pallet & Box Co., and Charles T. Reynolds, Sr., d. b. a. Charles T. Reynolds Box Company, seek review of the proceedings of the N. L. R. B. (Sec. 151 et seq., Title 29, U. S. C.), a reversal of the findings and order made against them by the Board and a dismissal of the complaints charging them with unfair labor practices. The Board filed an answer to the petitions by which it seeks enforcement of the order.

The Trial Examiner found that Reynolds and his supervisors engaged in coer-

cive conduct toward his employees because of their union activities, in violation of Section 8(a) (1) (Sec. 158(a) (1), Title 29, U.S.C.) of the National Labor Relations Act; that he violated Section 8(a) (3) (Sec. 158(a) (3), Title 29, U.S.C.) by discriminatorily discharging all of his employees at his Fairfield plant; and that the Reynolds Pallet & Box Co., a corporation, was the successor to Reynolds, the sole owner of the business, and was jointly liable with Reynolds for the unfair labor practices.

The Board affirmed the rulings of the Trial Examiner and adopted his findings, conclusions and recommendations. The order of the Board, directed to both petitioners, was in the usual form to cease and desist from discouraging membership in the union, from threatening employees with economic reprisals, from threatening employees with a refusal to recognize, bargain or enter into a contract with the union and in any manner interfering with, restraining or coercing employees in their right to self-organization etc. The order directed the corporation to offer the discharged employees employment and to make them whole for any loss sustained as a result of the discrimination against them. It further required posting an appropriate notice for sixty consecutive days.

The interim report of the Trial Examiner, and the Board's decision and order are reported at 139 N.L.R.B. 519. The facts are not much in dispute and are stated in the interim report. They may be briefly stated as follows: Charles T. Reynolds, Sr., doing business as Charles T. Reynolds Box Company, had operated for a number of years as a sole proprietorship and was engaged in the manufacture and sale of industrial boxes, skids, and pallets and the wholesale purchase and sale of lumber. His plant was at Fairfield, Ohio. Mr. Reynolds had been contemplating for several years gradually reducing his responsibility for operating the business and going into partial retirement. This plan began to take form in January 1961, and by Octo-

ber of that year he had sold his Fairfield plant, built a new factory building at Maud, Ohio, about twelve miles distant from the old plant, organized a corporation to take over the business, and had transferred the equipment to the new corporation at the new plant. Production by the corporation began at the new plant about October 4th.

The new corporation issued 240 common shares. Mr. Reynolds acquired 166 shares, his wife 48 and their son-in-law 14. The other 12 were divided among six persons, one of whom was M. R. Banning. Mr. Reynolds and Mr. Banning were elected as members of the board of directors of the corporation. Mr. Banning, who had not previously been connected with the business, was made president of the company. The other officers, including two sons-in-law of the Reynolds, together with all supervisory personnel, were transferred from the old plant. All of the equipment was transferred by sale from Mr. Reynolds to the corporation and installed in the new plant.

In the meantime, in the summer of 1961, while this change in organization, management and location was in progress, Local 637, United Brotherhood of Carpenters and Joiners of America, AFL–CIO, began a campaign to organize the employees. This campaign culminated in an election on October 13, 1961. Twenty-seven votes were cast in favor of the union and four were cast against it.

It was in the interim, between the beginning of the campaign and the election, that the alleged coercive conduct on the part of the employer occurred. The facts concerning this coercive conduct are stated in the Trial Examiner's Interim Report and it is not necessary to review them here. Statements made by Reynolds and his supervisors were obviously in violation of Section 8 (a) (1) of the Act (Sec. 158(a) (1), Title 29, U.S.C.) and this is virtually undisputed. There is substantial evidence to support the findings of the Trial Examiner concerning these violations by the employer.

On the day of the election, twelve employees were laid off by Reynolds. Eight more were laid off on November 3rd, six were laid off on November 10th, three on November 17th, and the last one of the employees at the old plant was laid off on December 1st. These employees were laid off ostensibly for the reason that there was a lack of work. The examiner found that the lack of work was caused by the transfer of the business to the new location and the hiring of new employees to operate the new factory. These facts are undisputed. The inference of the examiner that these lay-offs constituted discriminatory discharges, because of the employees' union activity, in violation of Section 8(a) (3) and (1) of the Act, is a logical one and supported by the evidence. This Court is bound by the inference of the examiner as adopted by the Board, if the facts are supported by substantial evidence. N. L. R. B. v. Walton Mfg. Co., 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829; N. L. R. B. v. Interurban Gas Corp., 317 F.2d 724, C.A. 6.

The pertinent question in this case is whether the corporation is the successor to and the alter ego of the sole proprietorship of Reynolds. The Trial Examiner found that Reynolds and his wife owned ninety percent of the stock of the company, that the supervisory personnel was brought over from the old plant, that the equipment of the old plant was purchased by the new company and transferred to the new location, and that the company continued in the same line of manufacturing and sales. These facts are undisputed. The conclusion of the examiner, based on these facts, that the corporation is the alter ego of the sole proprietorship is a logical one and is supported by substantial evidence.

This conclusion is in accordance with the following authorities: Southport Petroleum Co. v. N. L. R. B., 315 U.S. 100, 62 S.Ct. 452, 86 L.Ed. 718; rehearing denied, 315 U.S. 827, 62 S.Ct. 637, 86 L.Ed. 1223; Dickey v. N. L. R. B., 217 F.2d 652, C.A. 6; N. L. R. B. v. Weissman Co., 170 F.2d 952, C.A. 6,

cert. denied, 336 U.S. 972, 69 S.Ct. 942, 93 L.Ed. 1122; N. L. R. B. v. Colten, 105 F.2d 179, C.A. 6; N. L. R. B. v. Ozark Hardwood Co, 282 F.2d 1, C.A. 8; N. L. R. B. v. United States Air Conditioning Corp., 302 F.2d 280, C.A. 1.

Other questions presented by counsel for the petitioners relate to the refusal to grant petitioners a continuance of the hearing before the Trial Examiner and the allowance of amendments to the complaint. These are procedural questions which we find to be without merit.

A decree of enforcement may be entered.